**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abira Medical Laboratories LLC, | No. CV-24-01485-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Blue Cross Blue Shield of Arizona Incorporated, et al., | |
| Defendants. | |

At issue is Defendant Blue Cross Blue Shield of Arizona Inc.'s ("BCBSAZ") Motion to Dismiss (Doc. 11) Plaintiff Abira Medical Laboratories LLC d/b/a/ Genesis Diagnostic's ("Genesis") Complaint (Doc. 1). Genesis filed a Response (Doc. 16), and BCBSAZ filed a Reply (Doc. 19). After reviewing the briefing and the relevant case law, the Court will grant in part and deny in part the Motion. Specifically, the Court will dismiss the claims for misrepresentation, promissory estoppel, *quantum meruit*, and unjust enrichment without prejudice, and dismiss the claim for equitable estoppel with prejudice. The Court will allow Genesis the opportunity to amend the claims dismissed without prejudice.

## I.    BACKGROUND

This is breach of contract action in which BCBSAZ allegedly refused to pay Genesis for laboratory testing services rendered to "members/subscribers" (the "Insureds") who had policies with by BCBSAZ.[1]  (Doc. 1 ¶ 1.)

---

[1]  As BCBSAZ notes, this case is one of dozens that Genesis has filed against health plans across the United States.  In most of the other matters, Genesis asserts similar allegations

Genesis is a licensed medical testing laboratory that provided clinical laboratory, pharmacy, genetics, addiction rehabilitation, and COVID-19 testing services on specimens submitted by BCBSAZ between 2016 and 2019. (*Id.* ¶ 8, 12.) The requests for laboratory tests submitted on behalf of BCBSAZ's Insureds to Genesis contained an assignment of benefits (the "Assignment Clause"), which created a contractual obligation on BCBSAZ to pay Genesis for services rendered. (*Id.* ¶ 9, 12.) The Assignment Clause states:

> I hereby assign all rights and benefits under my health plan and direct payments be made to Genesis Diagnostics for laboratory services furnished to me by Genesis Diagnostics. I irrevocably designate authorize and appoint Genesis Diagnostics or its assigned affiliates as my true and lawful attorney-in-fact for the purpose of submitting my claims and pursuing any request, disclosure, appeal, litigation or other remedies in accordance with the benefits and rights under my health plan and in accordance with any federal or state laws, [i]f my health plan fails to abide by my authorization and makes payment directly to me, I agree to endorse the insurance check and forward it to Genesis Diagnostics immediately upon receipt. I hereby authorize Genesis Diagnostics or its assigned affiliates to contact me for billing or payment purposes by phone, text message, or email with the contact information that I have provided to Genesis Diagnostics, in compliance with federal and state laws.

(*Id.* ¶ 10.)

The Assignment Clause compelled BCBSAZ to pay Genesis as the assignee-beneficiary under the various insurance plans for the cost of testing services rendered to covered Insureds. (*Id.* ¶¶ 1, 12, 33.) Because BCBSAZ failed to pay the full cost of Genesis' services between 2016 and 2019, it owes Genesis $1,212,544. (*Id.*) Making matters worse, Genesis alleges that BCBSAZ intentionally engaged in "a long campaign designed to deprive [Genesis] of thousands of dollars it is rightfully owed" for the laboratory testing. (*Id.* ¶ 13.) BCBSAZ facilitated its campaign by failing to respond to claims made by Genesis or fabricating some other pretextual basis to refuse paying the invoices, such as (1) lack of adequate claim information; (2) untimely filing of the claim; and (3) lack of coverage by the Insureds for the services provided. (*Id.* ¶¶ 13–14.)

---

and seeks recovery for testing services. *See, e.g., Abira Med. Lab'ys LLC v. State Farm Mut. Auto. Ins.*, No. 23-03866 (GC) (JBD), 2024 WL 3199835, at *1 (D.N.J. June 26, 2024) (dismissing the complaint for failing to state a claim); *Abira Med. Lab'ys LLC v. Nat'l Ass'n of Letter Carriers Health Ben. Plan*, No. 23-05142 (GC) (DEA), 2024 WL 1928680, at *11–12 (D.N.J. Apr. 30, 2024.) (same).

1   BCBSAZ's conduct allegedly breached its payment obligations to the Insureds, and

2   now Genesis, as assignee-beneficiary, filed this lawsuit.  (*Id.* ¶ 15.)  In its Complaint,

3   Genesis asserts seven claims for relief: (1) breach of contract; (2) breach of the covenant

4   of good faith and fair dealing; (3) fraudulent misrepresentation; (4) negligent

5   misrepresentation; (5) equitable estoppel; (6) promissory estoppel; and (7) recovery under

6   theories of quantum meruit and unjust enrichment.[2]  (*Id.* ¶¶ 16–41.)  BCBSAZ then filed

7   the instant Motion to dismiss, which the Court will now consider.  (Doc. 11.)

8   **II.    LEGAL STANDARD**

9       **A.  Rule 12(b)(6)**

10      To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet

11  the requirements of Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the

12  claim showing that the pleader is entitled to relief," so that the defendant has "fair notice

13  of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

14  550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  This exists

15  if the pleader sets forth "factual content that allows the court to draw the reasonable

16  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

17  U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported

18  by mere conclusory statements, do not suffice." *Id.*

19      Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory

20  or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v.*

21  *Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A complaint that sets forth a

22  cognizable legal theory will survive a motion to dismiss if it contains sufficient factual

23  matter, which, if accepted as true, states a claim to relief that is "plausible on its face."

24  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  Plausibility does not equal

25  "probability," but requires "more than a sheer possibility that a defendant has acted

26  unlawfully." *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a

27

28  [2]  The Complaint is constructed in a way that presents the claims for relief in four rather
    than seven counts.  Although, to give weight to each of the asserted grounds for relief, the
    Court cognizes the Complaint as asserting seven claims for relief.

defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## B. Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007) (per curiam). The plaintiff must set forth "what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir.2001).

## III.    DISCUSSION

BCBSAZ argues that each of the seven claims for relief suffer fatal defects, warranting dismissal of the entire action. (Doc. 11 at 2.)  Genesis disagrees, contending that it has stated a claim for relief under each asserted theory, and thus the Court must deny BCBSAZ's Motion in its entirety. (Doc. 16 at 1.)  The Complaint combines up to four distinct legal claims under a single Count. (*See, e.g.*, Doc. 1 at 9.)  Here, however, the Court takes care to discuss the seven claims in their most logical order and groupings.

### A.  Breach of Contract

A breach of contract claim in Arizona requires Genesis to show (1) the existence of a contract; (2) breach; and (3) resulting damages. *First Am. Title Ins. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016) (citing *Graham v. Ashbury*, 540 P.2d 656, 657 (Ariz. 1975)). No doubt "[i]t is elementary that for an enforceable contract to exist there must be an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained." *Savoca Masonry Co. v. Homes & Son Constr. Co.*, 542 P.2d 817, 819 (Ariz. 1975).  Moreover, for an agreement to exist, the minds of the parties must meet as to the material terms of the contract, such as purchase price and the time and conditions of payment. *Hill-Shafer P'ship v. Chilson Fam. Tr.*, 799 P.2d 810, 815 (Ariz. 1990); *T.D. Dennis Builder, Inc. v. Goff*, 418 P.2d 367, 369 (Ariz. 1966).  Genesis has pleaded damages directly related to the alleged wrongdoing, claiming over $1 million for unpaid medical testing. (Doc. 1 ¶ 1.) The focus, then, is whether Genesis has adequately pleaded the existence of a contract and breach.

BCBSAZ argues that the breach of contract claim ought to be dismissed because the Complaint asserts only vague references of "insurance contracts" and the breach of unidentified obligations. (Doc. 11 at 5.)  According to BCBSAZ, without more concrete allegations of the breached contractual terms, Genesis has not shown that it is entitled to reimbursement or that BCBSAZ breached any contract. (*Id.*; Doc. 19 at 4.)  Instead, Arizona law required Genesis to allege the terms requiring coverage of the alleged services, the price to be paid for such services, and other terms that would entitle Plaintiff to

reimbursement.  (Doc. 11 at 5.)

In response, Genesis argues that it should not be required to plead the specific terms of the contract when those agreements are in the possession of BCBSAZ.  (Doc. 16 at 5 (citing *Innova Hosp. San Antonio, LP v. Blue Cross Blue Shield of Ga., Inc.*, 892 F.3d 719, 739 (5th Cir. 2018)).  Moreover, requiring non-specific allegations here is proper because, during the claim process, BCBSAZ does not provide copies of the underlying insurance contract or claim information.  (*Id.*)

In reply, BCBSAZ notes that Genesis was the alleged assignee of "all rights and benefits under [their] health plan(s)" and that it failed to ask BCBSAZ for a copy of a single health plan over the four-year period that the laboratory testing occurred.  (Doc. 19 at 2.) Therefore, in BCBSAZ's view, Genesis has filed this Complaint without first properly investigating their claims, which is an improper attempt to "unlock the doors of discovery . . . armed with nothing more than conclusions."  (*Id.* (citing *Iqbal*, 556 U.S. at 678).)

As an initial matter, BCBSAZ seems to concede that Genesis plausibly alleged the existence and terms of the Assignment Clause.  (*See* Doc. 19 at 2.)  The Clause operates as follows: the Insureds agreed that the dollar amount they were entitled to receive from their BCBSAZ health plan for laboratory testing performed by Genesis was to be paid directly to Genesis.  (*See* Doc. 1 ¶ 10.)  Though the assignment clause supports the idea that the Insureds assigned their benefits to Genesis, it alone does not plausibly allege the existence of underlying health plans that entitle Genesis to payment.  *See, e.g.*, *Abira Med. Lab'ys, LLC v. Mutual of Omaha Ins. Co.*, 8:24CV194, 2024 WL 4056573, at \*9 (D. Neb. Sept. 5, 2024) ("The rub is that such an assignment did not make Abira a party to the insurance contract . . . [thus] Abira must allege that the insureds' insurance policies . . . required Mutual of Omaha to pay for the services that Abira provided.")

Contrary to BCBSAZ's position, Genesis need not "plead the terms of the alleged contract with precision," *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021), but the Court "must be able to generally to discern at least what

material obligation of the contract defendant allegedly breached," *Qingdao Tang-Buy Int'l Imp. & Exp. Co., Ltd. v. Preferred Secured Agents, Inc.*, No. 15-CV-00624-LB, 2016 WL 6524396, at *3 (N.D. Cal. Nov. 3, 2016).     Here, the Complaint and the appended spreadsheet show that Genesis has been assigned the benefits of the underlying health plans and has conducted medical testing on hundreds of individuals who have BCBSAZ plans. (*See* Doc. 1 ¶ 10.)   The Complaint also alleges that BCBSAZ paid approximately 200 claims, showing that at least some of the underlying insurance plans exist and that they provided coverage for testing.   (*Id.* ¶ 20.)   These allegations, paired with the fact that BCBSAZ ceased payments on outstanding claims, allows the Court to infer that these agreements likely exist.   (*Id.*); *see also Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.")

Considering the allegations and the appended spreadsheet, the Court finds that Genesis has pleaded enough facts to stave off dismissal of its breach of contract claim.   The Complaint identifies the Insureds, BCBSAZ's representation that the Insureds possessed coverage, the amount due for the services rendered, the date of those services, and the specific language of the Assignment Clause executed by the Insureds.   (*See generally* Doc. 1.)   Together these allegations evidence that the underlying agreements may exist, BCBSAZ may have breached that agreement, and that Genesis was damaged.   (*See id.*); *cf. Abira Med. Lab'ys, LLC v. Kaiser Found. Health Plan of Mid-Atlantic States*, No. 24-CV-759, 2024 WL 2188911, at *2 (E.D. Penn. May 15, 2024) (relying on similar allegations and finding a breach of contract claim sufficient).

Accordingly, Court will deny BCBSAZ's Motion as to Genesis' breach of contract claim.

## B.  Breach of the Covenant of Good Faith and Fair Dealing

A contract under Arizona law "imposes upon each party a duty of good faith and fair dealing in its performance and enforcement."   *Ariz. Towing Pros., Inc. v. State of*

*Arizona*, 993 P.2d 1037, 1041 (Ariz. Ct. App. 1999) (finding that the government did not act in good faith when it invoked a termination for convenience clause to moot an appeal of another contracting party); *see also Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002). This covenant requires each party "to refrain from any action which would impair the benefits which the other had the right to expect from the contract or contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986). A party can breach the implied covenant "both by exercising express direction in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonable expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002).

Generally, breach of the implied covenant must rest on allegations separate from those substantiating a defendant's breach of an express obligation to perform. *Ipro Tech LLC v. Sun West Mort. Co.*, No. CV-17-04015-PHX-DLR, 2019 WL 2106417, *3 (D. Ariz. Mar. 21, 2019). Otherwise, "if a mere failure to perform an express obligation under a contract also established a breach of the implied covenant . . . , then *all* breaches of contract necessarily would also constitute breaches of the covenant." *Id.* Logically, Genesis must therefore allege that BCBSAZ acted in bad faith or unfairly to deprive Genesis of payments for the cost of care as the assignee-beneficiary.

BCBSAZ's failure to pay under the terms of the underlying insurance contracts serves as the basis for Genesis' breach of contract claim. Thus, breach of the duty of good faith and fair dealing could not be premised upon that action alone. Genesis also alleges that BCBSAZ's failure to pay the outstanding claims was done for "contrived and meritless" reasons such as (1) lack of adequate claim information; (2) untimely filing of claims; and (3) for lack of coverage despite representations that such coverage existed. (Doc. 1 ¶¶ 14, 26, 29.) Construing the allegations as true, the Court finds that Genesis has pleaded enough facts to sustain a claim for breach of the duty of good faith and fair dealing. The allegations exceed mere regurgitation of the same conduct that gave rise to the breach

action, as they highlight the alleged improper reasons that BCBSAZ decided to cease paying Genesis' claims. (*See id.*) Moreover, BCBSAZ's reliance on *Ipro Tech* is slightly misplaced, as that case disposed of a good faith and fair dealing claim at summary judgment, after the plaintiff provided no evidence other than the defendant's failure to perform. 2019 WL 2106417, at *4. Under the Federal Rules, Plaintiffs are generally allowed to plead alternative claims, so long as such a claim is not independently bereft of merit or legal support. Fed. R. Civ. P. 8(d); *see also Trustmark Ins. Co. v. Bank One, Ariz.*, 48 P.3d 485, 492 (Ariz. Ct. App. 2002) (explaining that Arizona law allows an unjust enrichment theory "as an alternative theory of recover in conjunction with [a] breach of contract claim," but only where the validity of the contract is in dispute). Therefore, this case being at the motion to dismiss stage, the Court will not dismiss Genesis' breach of the covenant of good faith and fair dealing claim.

## C. Fraudulent and Negligent Misrepresentation

Under Arizona law, "an actionable misrepresentation 'must relate to either a past or existing fact. It cannot be predicated on unfulfilled promises, expressions of intention or statements concerning future events unless such were made with the present intention not to perform.'" *Crossfirst Bank v. Vieste SPE LLC*, No. CV-18-01637-PHX-DLR, 2021 WL 2517892, at *4 (D. Ariz. Mar. 31, 2021) (quoting *Staheli v. Kauffman*, 595 P.2d 173, 175 (Ariz. 1979)); *see also McAlister v. Citibank (Arizona)*, 829 P.2d 1253, 1261 (Ariz. Ct. App. 1992) (explaining that negligent misrepresentation cannot be based on a "promise of future conduct"). Moreover, the present intention not to perform "must be established independent of a showing of the defendant's failure to perform." *Krieg v. Schwartz*, No. CV-13-00710-PHX-DLR, 2015 WL 12669893, at *6 (D. Ariz. Aug. 19, 2015).

BCBSAZ argues that Genesis' claims for fraudulent and negligent misrepresentation should be dismissed because (1) the claims are impermissibly based on the promise of a future action; and (2) Genesis fails to assert allegations comporting with Federal Rule 9(b)'s heightened pleading standard. (Doc. 11 at 7–10.) In response, Genesis argues that its claims are not based upon future action, but rather BCBSAZ's failure to

1    *continue* to pay for the types of claims it had paid for in the past. (Doc. 16 at 9.)

2    Additionally, Genesis argues that it has pleaded enough to comport with Rule 9. (*Id.*

3    at 9–10.)

4        The Court agrees with BCBSAZ. Genesis alleges that BCBSAZ's payment of

5    approximately 200 claims represented to Genesis that the insurer would pay the hundreds

6    of other claims that accrued over several years. (Doc 1 ¶ 30.) Further, Genesis alleges that

7    BCBSAZ's "course of conduct constituted a representation of Plaintiff that it would

8    continue to pay for Laboratory Testing Services rendered by Plaintiff." (*Id.*)[3] As alleged,

9    Genesis has not set forth facts to show BCBSAZ's past payments represented the insurer's

10    intent to provide future payment. (*See* Doc. 16 at 9.) And, even if such facts were pleaded,

11    a promise of future action, i.e., continuing to pay claims, is an untenable basis for fraudulent

12    or negligent misrepresentation claims under Arizona law. *See McAlister*, 829 P.2d at 1261;

13    *Krieg*, 2015 WL 12669893, at *6.

14        Each of the misrepresentation claims also fail to comport with Rule 9. Here, Genesis

15    alleges that "[BCBSAZ's] representatives not only request those services . . . but

16    represented to [Genesis] that the patients/insureds were all covered by policies of

17    insurance . . . and that [BCBSAZ] would pay for the services to be rendered." (Doc. 1

18    ¶ 29.). Additionally, Genesis alleges BCBSAZ's course of conduct was a representation

19    to pay future claims and that it "has demonstrated that it did not intend to reimburse

20    [Genesis] for providing Laboratory Testing Services." (*Id.* ¶¶ 30, 33.) These allegations

21    unquestionably sound in fraud, but without concrete allegations of the "time, place, and

22    specific content of the false representation as well as the identities of the parties to the

23    misrepresentation," the claim cannot survive. *See Schreiber Distrib. Co. v. Serv-Well*

24    *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Put another way, the Complaint

25
26
27
28
---
[3] The Court believes that there exists a scrivener's error in ¶ 30 of the Complaint. It is not clear how BCBSAZ's course of conduct amount to a representation "of" Genesis that it (Genesis) would continue to pay for its own services. The Court believes that the Complaint meant to say that BCBSAZ's course of conduct amounted to a representation "to Genesis" that BCBSAZ would continue to pay for Genesis' services. Or, alternatively, that BCBSAZ's course of conduct was a representation of BCBSAZ that it would continue to pay Genesis. Though, with either alteration in place of the error, the Court's outcome is not changed.

1   "must specify 'the who, what, when, where, and how' of the alleged misconduct.'"  *HM*
2   *Hotel Props. V. Peerless Indem. Ins.*, 874 F. Supp. 2d 850, 855 (D. Ariz. 2012) (quoting
3   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).   The current
4   Complaint omits several of these key allegations, maintaining unnamed representatives
5   made representations at some unspecified time.  (*See* Doc. 1.)

6        Because Genesis' claims are predicated on future promises, they fail as a matter of
7   law.  *See McAlister*, 829 P.2d at 1261; *Krieg*, 2015 WL 12669893, at *6–7.  Moreover,
8   Genesis' Response seems to misunderstand the nature of a misrepresentation claim on a
9   fundamental level.  (Doc. 16 at 8–10.)  There, Genesis explains that BCBSAZ paid some
10  claims, which represented to Genesis that the insurer would continue to pay claims—in
11  other words, Genesis contends that BCBSAZ promised future conduct.  Though Genesis'
12  claims fails outright, the Court is not convinced that they are unsalvageable.  Therefore,
13  the Court will grant BCBSAZ's Motion as to the misrepresentation claims and dismiss
14  those claims without prejudice.

15        **D. Equitable Estoppel and Promissory Estoppel**

16        As an initial matter, in Arizona, equitable estoppel "is available only as a defense,
17  while promissory estoppel can be used as a cause of action for damages." *Tiffany Inc. v.*
18  *W.M.K. Transit Mix, Inc.*, 493 P.2d 1220, 1224 (Ariz. Ct. App. 1972).  Although, an
19  equitable estoppel claim may be allowed to continue as a transmuted promissory estoppel
20  claim if the plaintiff alleges the elements of promissory estoppel.  *German v. Pima County*,
21  287 P.3d 800, 804 n.4 (Ariz. Ct. App. 2012).  Here, Gensis asserts both claims for equitable
22  estoppel and promissory estoppel.  (*See* Doc. 1.)  Because of this, Genesis' equitable
23  estoppel claim is superfluous.  That is, it might continue under a promissory estoppel
24  theory, but since Genesis separately alleges promissory estoppel based on the same facts,
25  there is no sense in determining whether the equitable estoppel claim should also continue.
26  Therefore, the Court will dismiss Genesis' equitable estoppel claim with prejudice.

27        A promissory estoppel claim requires "a promise, which the promi[s]sor should
28  reasonably foresee would cause the promisee to rely, upon which the promisee actually

relies to his detriment." *Satamian v. Great Divide Ins.*, 545 P.3d 918, 926 (Ariz. 2024). In stark contrast to the law on misrepresentation, promissory estoppel involves a "promise by one party . . . not in regard to a past or presently existing state of facts, but rather to a situation which one party promises will be true in the future." *Hisun Motors Corp., U.S.A. v. Auto. Testing and Dev. Servs., Inc.*, No. CV 11-1918-PHX-DGC, 2012 WL 682398, at *6 (D. Ariz. Mar. 2, 2012) (citing *Tiffany Inc. v. W.M.K. Transit Mix, Inc.*, 493 P.2d 1220, 1224 (Ariz. Ct. App. 1972)).

Here, BCBSAZ argues the claim fails because the allegations in the Complaint fail to allege any "representations" attributable to BCBSAZ or "representatives" of the company that made such representations to Genesis. (Doc. 11 at 11.) Second, BCBSAZ argues that the allegations, taken as true, cannot support finding that the insurer made a promise to continue to pay claims asserted by Genesis in the future. (*Id.* at 11–12.) Third, BCBSAZ argues that the Complaint is bereft of facts showing that Genesis reasonably relied on any representations from the insurer that it would pay for the claims. (*Id.*)

In response, Genesis argues that because it stood in the shoes of the insured, it had a reasonable expectation to be "compensated for [future] medical services." (Doc. 16 at 11.) Genesis also argues that BCBSAZ made representations when it paid roughly 200 claims and refused to pay the remaining claims. (Doc. 16 at 12.)

Arizona's promissory estoppel jurisprudence prescribes a relatively low factual pleading bar, that is, the plaintiff must simply allege that a promise was made. *See, e.g.*, *Mac Enter., Inc. v. Del E. Webb Dev. Co.*, 645 P.2d 1245, 1250 (Ariz. Ct. App. 1982). What constitutes a "promise," however, is subject to a bit more nuance. As the Arizona Court of Appeals has explained, "[a]n expression of *an intention to do something* is not a promise, and the word 'desire' is an expression of present purpose rather than a promise of future action." *School Dist. No. 69 of Maricopa Cnty. v. Altherr*, 458 P.2d 537, 544 (Ariz. Ct. App. 1969) (emphasis added), *overruled in part on other grounds by Bd. Trs. of Marana Elementary Sch, Dist No. 6 v. Wildermuth*, 492 P.2d 420, 422 (Ariz. Ct. App. 1972) (clarifying dicta in *Altherr* that suggested public entities were not subject to the doctrine of

estoppel).

To recount the relevant facts, Genesis alleges that medical service providers sent "requisitions of laboratory testing services" to it, which contained the assignment clause. (Doc. 1 ¶¶ 8–10.)  But at some other unspecified time, BCBSAZ's representatives "requested those services on behalf of" the Insureds and "represented to [Genesis] that the [Insureds] were all covered by policies . . . and that [BCBSAZ] would pay for the services."  (*Id.* ¶ 29.)  Further, Genesis alleges that "contractual rights were assigned by [BCBSAZ's] [I]nsureds in favor of [Genesis]," which obligated BCBSAZ to pay for those laboratory testing services.  (*Id.*)

These allegations suggest that someone at BCBSAZ "represented" to Genesis that the insurer would pay for medical laboratory services.  (*Id.*)  In other words, BCBSAZ put Genesis on notice of its *intent* to pay.  However, there is no allegation in the Complaint that suggests BCBSAZ made an express *promise* to Genesis to pay for those services.  *See Altherr*, 458 P.2d at 544 ("An expression of an intention to do something is not a promise.").  Apart from that fatal flaw, the Complaint does not make clear whether Genesis is asserting is promissory estoppel claim on a promise made by BCBSAZ directly to Genesis or asserting its entitlement to relief as the assignee-beneficiary.  In either reality, the claim fails for want of factual enhancement.

Therefore, the Court will grant BCBSAZ's Motion and dismiss Genesis' promissory estoppel claim without prejudice.

### E.  Quantum Meruit and Unjust Enrichment

As BCBSAZ notes, this Court has recognized that "[u]njust enrichment and *quantum meruit* are technically different claims."  *Dependable Nurses of Phx. LLC v. Cigna Healthcare Inc.*, No. CV-20-01877-PHX-SPL, 2021 WL 9597915, at *5 (D. Ariz. Feb. 2, 2021).  To prevail on an unjust enrichment claim under Arizona law, "a plaintiff must establish that, (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit."  *In re Ariz. Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1057 (D. Ariz. 2018).

*Quantum meruit* is an "equitable remedy under which 'a plaintiff who has rendered services benefitting a defendant may recover the reasonable value of those services when necessary to prevent the unjust enrichment of the defendant.'"  *Id.* (quoting *Cent. Ariz. Water Conservation Dist. v. United States*, 32 F. Supp. 2d 1117, 1140 (D. Ariz. 1988)).  *Quantum meruit* is appropriate where the parties have attempted to contract but the contract is unenforceable or void.  Unjust enrichment, by contrast, is properly asserted where there was never any attempt to arrive at a contract."  *Cent. Ariz. Water Conservation Dist.*, 32 F. Supp. 2d at 1140.

BCBSAZ argues that Genesis' claims for *quantum meruit* and unjust enrichment fail on three grounds: (1) Genesis has alleged that there are enforceable contracts between the parties; (2) Genesis could have sought the cost of the medical tests directly from the patient-Insureds; and (3) Plaintiff has failed to otherwise plead sufficient facts to state a claim for either claim for relief.  (Doc. 11 at 12–13.)  As expected, Genesis disagrees and argues that it should be allowed to assert these claims as alternatives to breach of contract.  (Doc. 16 at 12.)

The several allegations about express agreements giving rise to "obligations" for BCBSAZ to pay Genesis sink the claims for *quantum meruit* and unjust enrichment.  (*See* Doc. 1 ¶¶ 1, 5, 9–10, 12–13, 17–27, 29 (discussing the existence, enforceability, and obligations of the various insurance contracts entitling Genesis to payment for services rendered).)  This is precisely because these claims are sustainable only where there is an unenforceable or void contract, or where the parties never attempted to arrive at an agreement.  *Cent. Ariz. Water Conservation Dist.*, 32 F. Supp. 2d at 1140.  In other words, both claims are "premised on the absence of an express contract."  *Dependable Nurses*, 2021 WL 9597915, at 5.

As noted above, these claims may be asserted as alternative claims for relief if the alleged contract is in dispute.  *Trustmark*, 48 P.3d at 492; *Seaboard Sur. Co v. Grupo Mexico, S.A.B. de C.V.*, No. 06-CV-0134-PHX-SMM, 2009 WL 4827029, at *13–14 (D. Ariz. Dec. 19, 2009).  Here, BCBSAZ contends that Genesis "vaguely references

'insurance contracts' . . . but does not identify any allegedly breached terms of any contract." (Doc. 11 at 5.) Put another way, BCBSAZ disputes that a valid contract exists between the parties. Therefore, it would be premature for the Court to prevent Genesis from asserting *quantum meruit* and unjust enrichment as alternative claims at this time. *Cf. Ipro Tech*, 2019 WL 2196417, at *4 (finding on summary judgment that the "Court cannot grant summary judgment in favor of [plaintiff] on [undue influence] because there is a . . . dispute about whether the parties have an enforceable contract").

Even though Genesis may assert *quantum meruit* and unjust enrichment as alternative claims, it must still set forth factual allegations sufficient to state a claim for relief. The current iteration of the Complaint fatally omits facts showing Genesis conferred a legally cognizable "benefit" to BCBSAZ. (*See generally* Doc. 1.) The only allegation that comes close states that Genesis "conferred a benefit upon [BCBSAZ's] subscribers and/or members and, therefore, upon [BCBSAZ]." (*Id.* ¶ 37.) Though, given the relationship between the insurer, its insured, and medical providers, this allegation strains credulity. Indeed, the benefit of Genesis providing services to BCBSAZ's Insureds precisely falls onto the Insureds, as the insurer is "obligat[ed] to pay money to the insured—which can hardly be called a benefit." *Travelers Indem. Co. v. Losco Grp., Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001); *Physicians Surgery Ctr. Of Chandler v. Cigna Healthcare Inc.*, 609 F. Supp. 3d 930, 940 (D. Ariz. 2022) ("To state a claim for unjust enrichment, the plaintiff must confer a benefit to the defendant, not a third party.").

That notwithstanding, Genesis posits that BCBSAZ benefits from the discharge of its obligation to cover the costs of the Insureds. (Doc. 16 at 13 (citing *Plastic Surgery Ctr., PA v. Aetna Life Ins.*, 967 F.3d 218, 240–241 (3d Cir. 2020) (contemplating that a "benefit conferred" in an ERISA matter to be "the discharge of the obligation the insurer owes to the insured")).) Several courts outside of the ERISA context have reached the opposite result of that in *Plastic Surgery Center*, however. *See, e.g., Travelers Indem Co.*, 150 F. Supp. 2d at 563; *Abira Med. Lab'ys, LLC v. CIGNA Health & Life Ins. Co.*, 2024 U.S. Dist. LEXIS 176949, at *25 (D. Conn. Sept. 30, 2024); *Advanced Orthopedics & Sports Med.*

*Inst. v. Int'l Union of Operating Eng'rs Local 14-14B*, No. 3:19-cv-5076-BRM-ZNQ, 2019 U.S. Dist. LEXIS 223586, at *26 (D.N.J. Nov. 26, 2019); *Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F. Supp. 3d 425, 432 (N.D. Tex. 2020); *BCBSM, Inc. v. GS Labs, LLC*, No. 22-cv-513, 2023 U.S. Dist. LEXIS 15593, at *18–19 (D. Minn. Jan. 30, 2023); *Patel v. Aetna*, No. 2:17-cv-78, 2018 U.S. Dist. LEXIS 209955, at *10–11 (S.D. Ohio Dec. 12, 2018); *Joseph M. Still Burn Ctrs., Inc. v. Liberty Mut. Ins.*, No. CV 1:08-090, 2010 U.S. Dist. LEXIS 1095, at *32 (S.D. Ga. Jan. 6, 2010). Thus, on balance, the Court finds Genesis' reliance on an ERISA case to support the discharge of BCBSAZ's duty to pay (which is not alleged in the Complaint) misplaced. As a result, Genesis' allegation that it benefitted the Insureds and therefore benefitted BCBSAZ does not support the *quantum meruit* and unjust enrichment claims.

Like the misrepresentation claims, the Court is hesitant to dismiss the *quantum meruit* and unjust enrichment claims with prejudice, as they may yet be salvaged by amendment. Therefore, the Court will grant BCBSAZ's Motion as to these claims and dismiss those claims without prejudice.

## IV.    LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) requires that leave to amend be "freely give[n] when justice so requires." Leave to amend should not be denied unless "the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986). Therefore, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up).

The Court has discussed the veracity of each claim Genesis asserts in the Complaint and will grant leave to amend its claims for misrepresentation, promissory estoppel, *quantum meruit*, and unjust enrichment.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED dismissing** the claims for misrepresentation, promissory estoppel, *quantum meruit*, and unjust enrichment without prejudice and **dismissing** the claim for equitable estoppel with prejudice.

**IT IS FURTHER ORDERED granting** Plaintiff leave to amend the claims for misrepresentation, promissory estoppel, *quantum meruit*, and unjust enrichment. Plaintiff may file an Amended Complaint within thirty (30) days of the date of this Order.

Dated this 3rd day of April, 2025.

_____
Honorable Susan M. Brnovich
United States District Judge